UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KAYLYN SUZANNE SKINNER                     CIVIL ACTION

VERSUS                                      NO. 23-358-JWD-RLB

COMMISSIONER OF SOCIAL
SECURITY

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.** May 14, 2024

Signed in Baton Rouge, Louisiana, on May 14, 2024.

                                                  RICHARD L. BOURGEOIS, JR.
                                                  UNITED STATES MAGISTRATE JUDGE

1

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **KAYLYN SUZANNE SKINNER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-358-JWD-RLB** |
| **COMMISSIONER OF SOCIAL SECURITY** | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Kaylyn Suzanne Skinner ("Plaintiff") seeks judicial review of a final decision of the Social Security Administration denying her application for disability insurance benefits under the Social Security Act. (R. Docs. 1, 10, 15). As the procedural prerequisites have been met, this Court reviews Plaintiff's appeal. *See* 42 U.S.C. § 405(g); *see also* 20 C.F.R. § 404.981.

**I.    Procedural History**

On April 18, 2019, Plaintiff filed her application for disability insurance benefits. (Tr. 406-407). Plaintiff alleged disability beginning January 31, 2019, due to severe anxiety, severe depression, paranoia, trichotillomania, and trichophagia. (Tr. 406, 430, 436). Plaintiff's application for benefits was initially denied by the Social Security Administration on November 13, 2019. (Tr. 155). On reconsideration, it was again denied on June 15, 2020. (Tr. 167). Plaintiff filed a written request for hearing on August 2, 2020. (Tr. 217). Thereafter, administrative law judge Richard M. Exnicios (the "ALJ") held a hearing on April 21, 2021. (Tr. 120-154). He issued an unfavorable decision on May 18, 2021. (Tr. 185-198). On October 18, 2021, the Appeals Council remanded Plaintiff's case because the ALJ had not considered new evidence that had "come in late." (Tr. 47, 205-206). As a result, the ALJ held another administrative hearing on June 28, 2022 (the "Second Hearing"). (Tr. 81-119). When the ALJ "received a significant amount of evidence [and] arguments" after the Second Hearing, he scheduled a

supplemental hearing. (Tr. 47). The supplemental hearing was held on November 1, 2022. (Tr. 44-80). It resulted in the issuance of an unfavorable decision on December 29, 2022. (Tr. 13-33).

Ultimately, the ALJ found that Plaintiff suffers from "the following severe impairments: anxiety, depression, and personality and impulse control disorder." (Tr. 16). He also concluded Plaintiff "did not have an impairment or combination of impairments that met . . . the severity of one of the listed impairments in . . . 20 CFR 404.1520(d), 404.1525[,] and 404.1526[.]" (Tr. 16-17). The ALJ also concluded that despite Plaintiff's limitations, through the date last insured, she had the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but with [certain[1]] non-exertional limitations[.]" (Tr. 19). Based on Plaintiff's RFC and testimony by multiple vocational experts, the ALJ concluded Plaintiff is capable of being a cleaner, garments sorter, marker, kitchen helper, or photocopy machine operator. (Tr. 31). Consequently, the ALJ concluded Plaintiff was not disabled and not entitled to benefits. (Tr. 33). Disagreeing with this conclusion, Plaintiff submitted a request for reconsideration on January 31, 2023. (Tr. 403-404). On March 13, 2023, the Appeals Council denied Plaintiff's request. (Tr. 1-3). As a result, Plaintiff brought this action. (R. Doc. 1).

## II.    Standard of Review

This Court's review of the ALJ's decision is limited under 42 U.S.C. § 405(g) to two inquiries: (1) whether there is substantial evidence in the record to support the findings of the ALJ and (2) whether the correct legal standards were applied by the ALJ. *Anthony v. Sullivan*, 954 F. 2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F. 2d 1019, 1021 (5th Cir. 1990).

---

[1] These limitations were given: "limitations to understand, remember, and carry out instructions is limited to detailed and semi-complex; use of judgment is limited to occasional work-related decisions at that same intellectual level; interactions with supervisors, coworkers, and the general public is limited to occasional and interaction with the public is superficial; "superficial" is defined as not directly working with the public, analogous to someone getting buggies at the grocery store or working in the back who may see the public or answer a question; dealing with changes in the work setting is limited to a consistent and stable work environment where they know their schedule ahead of time or shift work; moderate to low stress such as a factory line or making critical decisions." (Tr. 19).

"Substantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1150, 203 L. Ed. 2d 504 (2019) (quotations and citation omitted). The Fifth Circuit has held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Bailey v. Saul,* 853 F. App'x 934, 935 (5th Cir. 2021) (quotations and citations omitted). "The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the [ALJ] even if it finds that the evidence preponderates against the [ALJ]'s decision." *Bonds v. Colvin,* No. CIV. A. 13-417-JJB, 2014 WL 4470732, at *1 (M.D. La. Sept. 10, 2014) (citations omitted). "A reviewing court must defer to the ALJ's decision [if] substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record." *Owens v. Kijakazi*, No. CV 20-389-JWD-SDJ, 2023 WL 6150244, at *1 (M.D. La. Sept. 20, 2023) (citing *Leggett v. Chater*, 67 F. 3d 558, 564 (5th Cir. 1995)).

In assessing whether substantial evidence supports a plaintiff's RFC, reviewing courts should consider the following. An RFC is the "most the claimant can still do despite his [or her] physical and mental limitations[.]" *Perez v. Barnhart*, 415 F. 3d 457, 462 (5th Cir. 2005) (citing 20 C.F.R. § 404.1545(a)(1)). It is "determined by combining a medical assessment of [a claimant's] impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollis v. Bowen*, 837 F. 2d 1378, 1386-87 (5th Cir. 1988). "[A]n ALJ may not—without opinions from medical experts—derive the applicant's residual functional capacity based . . . on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (citing *Ripley v. Chater*, 67 F. 3d 552, 557 (5th Cir. 1995)). However, "[i]f the

4

ALJ has sufficient facts before him to make a determination, he has no obligation to order additional consultative examinations." *McCray v. Kijakazi*, No. 21-60401, 2022 WL 301544, at *2 (5th Cir. Feb. 1, 2022) (citation omitted).

### III.   The ALJ's Determination

An ALJ applies a five-step sequential analysis to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4). First, the claimant must prove he or she is not engaged in "substantial gainful activity[.]" 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits [his or he]r physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). Third, the ALJ must conclude the claimant is disabled if he or she proves that his or her impairment is—"or to is equal to"—one of the impairments listed in the appendix to subpart P of 20 C.F.R. § 404. 20 C.F.R. § 404.1520(d). Fourth, the claimant bears the burden of proving he or she is incapable of meeting the physical and mental demands of his or her past relevant work. *See* 20 C.F.R. § 404.1520(f).

If the claimant is successful at steps one, two, and four, but not three, the burden shifts to the ALJ to prove, considering the claimant's RFC, age, education, and past work experience, that he or she is capable of working. 20 C.F.R § 404.1520(g). Upon completion of these steps, the ALJ in this case issued a decision on December 29, 2022, determining the following: (Tr. 13-33).

1.  The claimant last met the insured status requirements of the Social Security Act on June 30, 2021. (Exhibit 8D). (Tr. 16).

2.  The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 31, 2019 through her date last insured of June 30, 2021 (20 CFR 404.1571 *et seq*.). (Tr. 16).

3.  Through the date last insured, the claimant had the following severe impairments: anxiety, depression, and personality and impulse control disorder. (20 CFR 404.1520(c)). (Tr. 16).

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the

5

listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (Tr. 16-17).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: limitations to understand, remember, and carry out instructions is limited to detailed and semi-complex; use of judgment is limited to occasional work-related decisions at that same intellectual level; interactions with supervisors, coworkers, and the general public is limited to occasional and interaction with the public is superficial; "superficial" is defined as not directly working with the public, analogous to someone getting buggies at the grocery store or working in the back who may see the public or answer a question; dealing with changes in the work setting is limited to a consistent and stable work environment where they know their schedule ahead of time or shift work; moderate to low stress such as a factory line or making critical decisions. (Tr. 19).

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565). (Tr. 30).

7. The claimant was born on February 8, 1996 and was 25 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563). (Tr. 30).

8. The claimant has at least a high school education (20 CFR 404.1564). (Tr. 30).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). (Tr. 30).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a). (Tr. 30).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 31, 2019, the alleged onset date, through June 30, 2021, the date last insured (20 CFR 404.1520(g)). (Tr. 33).

## IV. Discussion

Plaintiff asks this Court to "reverse and remand this case for further administrative proceedings under 42 U.S.C. § 405(g) and § 1383(c)(3)." (R. Doc. 10 at 21). Plaintiff argues remand is necessary because the ALJ failed to (i) "adopt or reject limitations offered by [state agency medical consultants ("SAMC(s)")] whose opinions he found persuasive[;]" (ii)

"recognize the consistency of the treating and examining physicians' opinions[;]" and (iii) "develop the administrative record [regarding her] functional limitations[.]" (R. Doc. 10 at 2).

### A.    The ALJ Adopted the Limitations Offered by McFarlain and Constantin

On November 12, 2019, SAMC Robert McFarlain ("McFarlain") provided a medical opinion noting the following: (Tr. 164)

- Understanding and Memory: [Plaintiff] can understand and remember semi-complex instructions regarding performance of work-related tasks, both novel and familiar, of three to four steps or more. (Tr. 164).

- Concentration, Persistence and Pace: [Plaintiff] can sustain attention for at least two hours at a time, can pace the work activities and can persist on task to the extent typically required to complete semi-complex non-repetitive tasks (tasks, both novel and familiar of three to four steps), with occasional but tolerable errors by [Plaintiff] (errors corrected by feedback from a supervisor). (Tr. 164).

- Social Interaction: [Plaintiff] is generally able to accept and respond appropriately to guidance and can get along with co-workers [and] is able to sustain appropriate interactions in a regular work environment and usually can respond appropriately to constructive instructions, with occasional but tolerable[2] lapses. (Tr. 164).

On June 15, 2020, SAMC Lisette P. Constantin ("Constantin") adopted the above in her opinion but added the following: (Tr. 179).

- [Plaintiff] can understand, remember, and carry out semi-complex tasks w[ith] routine training and supervision. [Plaintiff] can relate to supervisors, peers, and customers on a superficial work basis. [Plaintiff] can adapt appropriately to a low stress work situation and would likely do better in settings w[ith] minimal social requirements. (Tr. 179).

Plaintiff argues remand is necessary because the ALJ failed to adopt or explain his rejection of the above "limitations" when he described Plaintiff's RFC. (R. Doc. 10 at 3, 4, 5, 6). The Commissioner of Social Security (the "Commissioner") asserts that (i) the post-2017 C.F.R.

---

[2] This Court does not consider Plaintiff's ability "to sustain appropriate interactions in a regular work environment and usually can respond appropriately to constructive instructions, with occasional but *tolerable* lapses" to be a limitation. (Tr. 164) (emphasis added).

7

requirements do not require the ALJ to explain his reasons for adopting or rejecting each limitation provided by a medical opinion, and (ii) regardless, the ALJ arguably adopted the above. (R. Doc. 12 at 11, 12, 13, 14). This Court agrees.

"[T]he ALJ is not required to consider and accept every limitation suggested by every medical opinion." *Bednorz v. Kijakazi*, No. MO22 CV 00111DCRCG, 2023 WL 6147858, at *12 (W.D. Tex. Aug. 3, 2023), *report and recommendation adopted sub nom. Bednorz v. Comm'r of Soc. Sec.,* No. MO:22-CV-00111-DC, 2023 WL 5846804 (W.D. Tex. Sept. 11, 2023) (citing *Watts v. Kijakazi*, No. 21-2044, 2022 WL 18109797, at *6 (E.D. La. Nov. 18, 2022)); *see* 20 C.F.R. § 404.1520c(b)(1) ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually."). Rather, for claims filed on or after March 27, 2017, the ALJ must simply determine the persuasiveness of medical opinions or prior administrative findings by "applying five factors: (1) supportability, (2) consistency, (3) relationship with the claimant including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and extent of treatment relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding." *Watts*, 2022 WL 18109797, at *6 (citing 20 C.F.R. § 404.1520c(c); *Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018)). "An ALJ must articulate how he [or she] considered the supportability and consistency factors[,]" but need not "discuss how [he or] she considered the medical source's relationship with the claimant, specialization, or other factors in [his or] her determination." *Id.,* at *7 (citing 20 C.F.R. § 404.1520c(b)(2); *Winston*, 755 F. App'x at 402 n.4).

Supportability refers to the idea that the "more relevant" evidence there is to support an opinion, the "more persuasive" that opinion will be. 20 C.F.R. § 404.1520c(c)(1). Consistency refers to the idea that the "more consistent" an opinion is with evidence from other medical and

8

nonmedical sources, the "more persuasive" the opinion will be. 20 C.F.R. § 404.1520c(c)(2). In other words, "supportability looks internally to the bases presented by the medical opinion itself while consistency is an external inquiry that juxtaposes a medical opinion to other evidence in the record, including opinions of other medical professionals." *Bednorz*, 2023 WL 6147858, at *4 (citation omitted).

Here, the ALJ addressed both the supportability and consistency of McFarlain and Constantin's opinions when he noted their opinions were based on Plaintiff's medical records but were not entirely consistent[3] with the parts of the record showing Plaintiff's symptoms improved with medication. (Tr. 26-27). Thus, the ALJ committed no error to any extent he failed to adopt or fully explain his rejection of each of McFarlain or Constantin's limitations. *See Bednorz*, 2023 WL 6147858, at *4 (citing 20 C.F.R. § 404.1520c(b)) (ALJ need not provide "individual explanations for each . . . medical opinion"); *See also Silva v. Kijakazi,* No. 22-51045, 2023 WL 3723628, at *1 (5th Cir. May 30, 2023) (quotations and citation omitted) ("ALJ is not always required to do an exhaustive point-by-point discussion of the evidence [he or] she reviews.").

Regardless, the RFC determined by the ALJ allowed for "work at all exertional levels but with the following non-exertional limitations" that are consistent with those set forth above. (Tr. 19).

(1) limitations to understand, remember, and carry out instructions is limited to detailed and semi-complex;
(2) use of judgment is limited to occasional work-related decisions at that same intellectual level;
(3) interactions with supervisors, coworkers, and the general public is limited to occasional and interaction with the public is superficial; "superficial" is defined as

---

[3] With regard to McFarlain, the ALJ wrote, "Overall, the records showed claimant's symptoms were improved with medication and therapy with fairly unremarkable mental status examination findings. Thus, this opinion was partially persuasive." (Tr. 27). Regarding Constantin, the ALJ wrote, "Overall, this was *generally* consistent with the claimant's conservative mental health treatment and her mental status examinations with improvement in her symptoms with medication and therapy. Thus, this opinion was partially persuasive." (Tr. 27). (emphasis added).

9

  not directly working with the public, analogous to someone getting buggies at the grocery store or working in the back who may see the public or answer a question;

(4) dealing with changes in the work setting is limited to a consistent and stable work environment where they know their schedule ahead of time or shift work;

(5) moderate to low stress such as a factory line or making critical decisions. (Tr. 19).

The above is consistent with McFarlain and Constantin's limitations. To the extent additional limitations are directed by McFarlain and Constantin, the ALJ explained that those opinions were partially persuasive and the above RFC is supported by the record. For example, RFC limitations (1) and (2) incorporate McFarlain and Constantin's findings that Plaintiff "can understand and remember semi-complex instructions regarding performance of work related tasks, both novel and familiar, of three to four steps or more" and "can understand, remember, and carry out semi-complex tasks w[ith] routine training and supervision[.]" (Tr. 19, 164, 179). McFarlain and Constantin's observation that Plaintiff can "sustain [her] attention for at least two hours at a time" is also incorporated as the RFC states her capacity is limited to a consistent work environment, or "shift work[.]" (Tr. 19, 164, 179). And as the Commissioner rightly points out, the ability to "sustain attention for at least two hours at a time" is not a true limitation because courts have recognized that a typical eight-hour workday involves a morning break, lunch, and afternoon break, meaning employees generally work no more than two hours at a time. *Bissell v. Berryhill*, No. CV 17-1294, 2019 WL 908258, at *4 (W.D. La. Feb. 1, 2019), *report and recommendation adopted*, No. CV 17-1294, 2019 WL 885920 (W.D. La. Feb. 22, 2019).

While Plaintiff is correct that limitation (3) does not fully incorporate Constantin's observation that Plaintiff "can relate to supervisors, peers, and customers on a superficial work basis[,]" Plaintiff ignores that McFarlain did not come to the same conclusion as Constantin. (Tr. 19, 164, 179). (R. Doc. 10 at 6, 7). While not a verbatim iteration of Constantin's findings, RFC

10

limitation (3) is sufficient as it is supported by the record[4] and *both* McFarlain and Constantin's opinions. *See Hess v. Kijakazi,* No. CV 22-5305, 2023 WL 8696374, at *6 (E.D. La. Oct. 20, 2023), *report and recommendation adopted sub nom. Hess v. Soc. Sec. Admin.,* No. CV 22-5305, 2024 WL 1231327 (E.D. La. Mar. 22, 2024) (citations omitted). ("no requirement that an ALJ's RFC finding mirror or match a medical opinion"); *see also Webster v. Kijakazi*, 19 F. 4th 715, 719 (5th Cir. 2021) (affirming where ALJ declined to adopt the SAMC's restrictive limitations verbatim). Thus, substantial evidence supports the RFC, and remand is unnecessary not only because the ALJ was not obligated to adopt or explain his rejection of each of McFarlain and Constantin's limitations, but also because substantial evidence supports the limitations incorporated into the RFC..

### B.    Failure to Address Consistency of Stern and Daniels' Opinion was Harmless

As mentioned above, an ALJ must determine the persuasiveness of medical opinions by "applying five factors[,]" with the two most important being "consistency and "supportability[.]" *Watts*, 2022 WL 18109797, at *6 (citations omitted). Plaintiff argues that the ALJ failed to address whether the opinion of Plaintiff's treating physician David Stern ("Stern") and Plaintiff's treating social worker Mendy Daniels ("Daniels") was consistent with the opinion of medical examiner Seth Kunen ("Kunen"). (R. Doc. 10 at 12). In his opinion, the ALJ noted that "Stern and [] Daniels had been providing treatment for [Plaintiff but] th[eir] opinion provided a very high degree of limitations not supported by or consistent with their treatment records[.]" (Tr. 28). The ALJ, while using the term "consistent[,]" is only addressing whether Stern and Daniels' opinion is supported by their own examinations of Plaintiff, not whether the opinions are

---

[4] As the ALJ discussed, the record shows Plaintiff is capable of occasional interaction with supervisors, coworkers, and the general public, because, Plaintiff has had boyfriends, gets along with her friends and family, and goes to the grocery store. (Tr. 17, 21-22, 67, 95, 97, 101, 133, 135, 141-42, 676, 683, 693, 703, 730, 732, 747).

consistent with other opinions or record evidence. *Bednorz*, 2023 WL 6147858, at *4. Thus, Plaintiff is correct that the ALJ failed to address the consistency of Stern and Daniels' opinion with the opinion of Kunen.

However, "notwithstanding [an] ALJ's error, remand is warranted only if th[at] ALJ's error was harmful." *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *3 (5th Cir. Jan. 18, 2023); *See Ripley*, 67 F. 3d at 557 ("Reversal of [an ALJ's] decision, however, is appropriate only if the applicant shows that he [or she] was prejudiced."). To show prejudice from an ALJ's failure to comply with 20 C.F.R. § 404.1520c articulation requirements, Plaintiff must "show that if the ALJ had given further explanation [of the medical opinion], then [he or] she would have adopted them." *Id*, at *4. Otherwise, Plaintiff would be "asking [the court] to reweigh the evidence to show that she was prejudiced by the ALJ's failure to explain, which [the court] cannot do." *Id* (citing *Garcia v. Berryhill*, 880 F. 3d 700, 704 (5th Cir. 2018)).

The Court finds that Plaintiff has failed to demonstrate that the ALJ would have adopted Stern and Daniels' opinion had he noted any consistency with Kunen's opinion. (R. Doc. 10). Stern and Daniels filled out one brief and conclusory checklist. *See Greenspan v. Shalala,* 38 F. 3d 232, 237 (5th Cir.1994) (ALJ may disregard statements that are brief and conclusory). The ALJ in this case found Stern and Daniels' opinion unpersuasive, not because of any consistency issue but because the opinion was not supported by Stern and Daniels' own examination notes. (Tr. 28). For example, as the ALJ stated, and as this Court confirms, "[t]here was no support for their claim . . . that [Plaintiff] had marked limitations with attention and concentration for more than brief periods of time, when she was repeatedly noted by them to have a normal attention span in multiple examinations and they never documented her having a reduced attention span." (Tr. 28, 681, 686, 688, 693, 695, 705, 707, 709, 712, 714, 717, 719, 722, 730, 728, 733, 734, 736, 738, 740, 742, 749, 751, 753, 755, 760, 763, 774-776). There was also no support for their

claim that Plaintiff had "limitations with maintaining her personal appearance and hygiene" because "[t]heir treatment records repeatedly noted she had intact and unimpaired self-care" and had a normal appearance; at worst, she was "casually groomed[.]" (Tr. 28, 681, 686, 688, 693, 695, 705, 707, 709, 712, 714, 717, 719, 722, 730, 728, 734, 736, 738, 740, 742, 749, 751, 753, 755, 760, 763, 774-776). Thus, this Court finds that any error in addressing the consistency standard was harmless as it would not have changed the ALJ's determination—which this court finds to be supported by substantial evidence—that Stern and Daniels' opinions are unpersuasive as they were "based on symptoms that were never documented[.]" (Tr. 28, 681-695, 705-776).

This Court also notes that the fact that the opinion belonged to Plaintiff's treating physician and social worker is irrelevant. *See Webster*, 19 F. 4th at 719 (affirming where ALJ rejected testimony of claimant's examining physician as inconsistent with the medical evidence, which showed improvement); *see also Lopez v. Kijakazi*, No. SA-21-CV-00930-ESC, 2022 WL 4355142, at *4 (W.D. Tex. Sept. 20, 2022) (ALJ is "free to adopt in part or reject in full any opinion [he or she] finds not to be supported by . . . the medical evidence").

## C. The Record was Developed Regarding Plaintiff's Functional Limitations

While a claimant bears the ultimate burden of proving his disability, an ALJ must "fully and fairly" develop the record before him in order to properly assess a disability claim. *Carey v. Apfel*, 230 F. 3d 131, 142 (5th Cir. 2000) (citations omitted). Plaintiff contends this case should be remanded because the ALJ failed to fully develop the record. (R. Doc. 10 at 8). Plaintiff first argues the ALJ "erred in relying upon" the opinions of McFarlain and Constantin, because their opinions were provided before additional medical records became available. (R. Doc. 10 at 8).

McFarlain and Constantin's opinions were provided on November 12, 2019, and June 15, 2020, respectively; yet, before the Second Hearing, Plaintiff added to the record additional medical records covering the time period of June 16, 2020 to May 11, 2022 (the "New

13

Records"). (Tr. 164, 179, 205-206, 702-798). Plaintiff contends that because McFarlain and Constantin's opinions are stale and the ALJ was unpersuaded by Stern and Daniels' opinion, the ALJ relied on his lay judgments in assessing the record and denying Plaintiff's claim. (R. Doc. 10 at 10). Thus, Plaintiff concludes remand is necessary so the ALJ can obtain additional medical opinions addressing the New Records. (R. Doc. 10 at 11). The Commissioner argues the New Records are "limited" and "show normal mental findings" so that McFarlain and Constantin's opinions remain relevant, and no further record development is necessary. (R. Doc. 12 at 15).

While the Fifth Circuit has not directly addressed the standards for staleness, one court within the Fifth Circuit explains that "a medical opinion is not stale simply [when] it is based on an incomplete record[, but rather when it] predate[es] deterioration in a claimant's overall physical condition[.]" *Speight v. Comm'r of Soc. Sec.,* No. 2:21-CV-52-KS-RPM, 2022 WL 7376353, at *4 (S.D. Miss. July 6, 2022), *report and recommendation adopted sub nom. Speight v. Kijakazi,* No. 2:21-CV-52-KS-RPM, 2022 WL 4596160 (S.D. Miss. Sept. 30, 2022). To prove that a medical opinion is stale, a "claimant must demonstrate that the additional medical records [left unreviewed] marked an obvious, significant deterioration in his [or her] overall physical condition." *Id.* If this is shown, the stale medical opinion "may not constitute substantial evidence [and, if the ALJ relied upon it], the ALJ effectively failed to rely on a medical opinion to reach his RFC determination." *Id.*

McFarlain and Constantin, considered together, reviewed eight medical records (the "Old Records"): (1) A medical examination by Kunen that occurred on October 28, 2019; (2) an April 1, 2020 visit to Donna Westlake ("Westlake"); (3) an April 21, 2020 visit to Daniels; (4) an April 29, 2020 visit to Westlake; (5) a May 5, 2020 visit to Daniels; (6) a May 13, 2020 visit to Westlake; (7) a May 19, 2020 visit to Daniels; and (8) a June 2, 2020 visit to Daniels. (Tr. 674-677, 685-689, 707-710, 690-694, 721-723). The following is a summary of these records.

14

- **October 2019:** On October 28, 2019, Kunen noted Plaintiff was "miserable, anxious, and depressed[,]" had "extreme social anxiety[,]" had "frequent panic attacks[,]" and was complaining of "paranoia[.]" (Tr. 674, 677). Plaintiff "denied experiencing auditory or visual hallucinations." (Tr. 677).

- **April 2020:** On April 1, 2020, Plaintiff's anxiety continued but was improved, and Westlake noted no signs of depression, anxiety, or delusions. (Tr. 721-722). On April 21, 2020, Daniels noted that Plaintiff had improved so there were no signs of depression, anxiety, or delusions. (Tr. 719). On April 29, 2020, Westlake noted Plaintiff had improved, but was also having some anxiety related to COVID-19. (Tr. 716). During the appointment, there were visible signs of anxiety, but no signs of depression or delusions. (Tr. 717).

- **May 2020:** On May 5, 2020, Daniels noted Plaintiff's anxiety continued to worsen, but that there were no apparent signs of depression or delusions. (Tr. 688). On May 13, 2020, Westlake noted Plaintiff's anxiety and depression had improved and noted no apparent signs of depression, anxiety, or delusions. (R. Doc. 711-712). On May 19, 2020, Daniels noted Plaintiff's depression had worsened and there were apparent signs of moderate depression and apparent signs of anxiety; there were no apparent signs of delusions. (Tr. 709-710).

The question for this Court is whether the New Records, detailed below, demonstrate "an obvious, significant deterioration" in Plaintiff's overall condition as compared to the Old Records. *Speight,* 2022 WL 7376353, at *4.

- **June 2020:** On June 2, 2020, prior to Constantin's review of the record, Daniels noted that "[a]nxiety symptoms continue to occur[,]" even during the session, but there were no signs of depression or delusions. (Tr. 681). On June 16, 2020, after Constantin's review, Daniels noted that Plaintiff's anxiety remained unchanged, while Plaintiff's depression improved. (Tr. 705). No delusions were reported. (Tr. 705). On June 18, 2020, Plaintiff met with Stern, reporting that "she can't tolerate being around people because she feels judged" and is "always anxious[.]" (Tr. 702-703). She reported no delusions. (Tr. 702). Stern diagnosed Plaintiff with bipolar disorder and generalized anxiety disorder. (Tr. 704).

- **January 2021:** On January 25, 2021, Stern found Plaintiff was "no longer having down days" and showed no apparent signs of depression, anxiety, or delusions. (Tr. 728). The same day, Daniels noted Plaintiff's depressive symptoms were "less frequent or less intense" and her anxiety "continue[d], but [wa]s less severe and frequent." (Tr. 730). At the time of the session, there were no signs of depression, anxiety, or delusions. (Tr. 730-731).

- **February 2021:** On February 3, 2021, Daniels noted Plaintiff's depression was "hardly . . . noticeable[,]" but her "anxiety symptoms continue[d]." (Tr. 732). At the time of this session, there were no signs of depression, anxiety, or delusions.

15

      (Tr. 732-733). On February 9, 2021, Plaintiff was doing well and Stern found Plaintiff showed no apparent signs of depression, anxiety, or delusions. (Tr. 734). On February 17, 2021, Daniels noted Plaintiff's symptoms of depression and anxiety continued, with Plaintiff reporting "slightly worse" depression but "less" anxiety. (Tr. 736). There were no apparent signs of delusions. (Tr. 736). On February 22, 2021, Plaintiff was "very sad and down" but Sten noted no evident or apparent signs of depression, anxiety, or delusions. (Tr. 738).

- **March 2021:** On March 2, 2021, Stern noted Plaintiff was "still very anxious[,]" but noted no depression or delusions; Stern's exam revealed neither evident depression nor apparent anxiety. (Tr. 740). The next day, Daniels noted Plaintiff's continuing depression and anxiety, with the anxiety improving, and the depression being apparent during the time of the appointment. (Tr. 742). Plaintiff was having no delusions. (Tr. 742). On March 15, 2021, Plaintiff told Stern she "still has panic attacks" and was beginning to have "paranoid delusions[,]"[5] but that her depression was "not as bad[.]" (Tr. 756). Stern found she was "[m]ildly improved from [her] previous visit[.]" (Tr. 756). On March 17, 2021, Daniels noted Plaintiff was "depressed" with her chief complaint being anxiousness. (Tr. 758). Daniels also noted that Plaintiff reported an "increased paranoid process." (Tr. 758). On March 31, 2021, Stern concluded Plaintiff's symptoms were "mildly worse than [her] previous visit[.]" (Tr. 767).

- **April 2021:** On April 7, 2021, Stern concluded Plaintiff's symptoms were "mildly improved from [her] previous visit[.]" (Tr. 761). On April 12, 2021, Plaintiff reported worse anxiety, worse mood, and interrupted sleep; Stern found her symptoms were "[m]ildly worse than [her] previous visit[.]" (Tr. 791-792). On April 21, 2021, Plaintiff reported worse anxiety and an episode where she thought "the devil was in [her] shower[;]" Stern concluded her symptoms were "[m]ildly worse than [her] previous visit[.]" (Tr. 763-764).

      Considering the above, it is not obvious that the New Records reflect such a significant change in Plaintiff's *overall* condition that Constantin and McFarlain's opinions are stale. *See Speight,* 2022 WL 7376353, at *5 (citations omitted) (where newer medical records suggested a slight deterioration of condition, the opinion of a doctor who reviewed prior medical records was not stale). Up until March 15, 2021, Plaintiff's symptoms revealed no change from the symptoms she presented in the Old Records. (Tr. 674-742). The first evidence of any change was recorded on March 15, 2021, when Plaintiff informed Stern she was having "paranoid delusions[.]" (Tr. 756). This Court does not find this to be evidence of a significant change in Plaintiff's condition

---

[5] Plaintiff said, "I think they're going to set things on fire or watching us through the fire alarms." (Tr. 756).

16

for three reasons: (1) Plaintiff has not alleged any disability on the basis of her delusions, (2) Plaintiff complained of paranoia, a condition she has alleged, as long ago as her appointment with Kunen on October 28, 2019, and (3) Stern noted at the March 15, 2021 appointment that despite the delusions, Plaintiff had "[m]ildly improved from [her] previous visit[.]" (Tr. 756, 764). The remainder of Plaintiff's records also do not present any obvious deteriorations in Plaintiff's overall condition as the worst deterioration to Plaintiff's condition overall was Stern noting in her last two visits that her symptoms were "[m]ildly worse than [her] previous visit[.]" (Tr. 763-764, 791-792). As Plaintiff's "records suggest, *at most*, a slight deterioration[,]" this Court finds McFarlain and Constantin's opinions are not stale. *Speight,* 2022 WL 7376353, at *5.

Even if McFarlain and Constantin's opinions were stale, the Fifth Circuit has made clear that this would not be an issue. In *Wills*, the Fifth Circuit concluded that "even if the ALJ did partially rely on [stale] reports, [plaintiff] fail[ed] to show this would constitute error" when she argued "that, by relying on unusable medical opinions, the ALJ effectively did not rely on *any* medical opinion." *Wills v. Kijakazi,* No. 22-20609, 2023 WL 4015174, at *2-3 (5th Cir. June 14, 2023). "Emphasizing the 'exceedingly deferential' standard of review of ALJs' decisions, the Fifth Circuit held that when the 'only medical opinion speaking to the effect of a claimant's impairments on her ability to work is provided prior to a significant development in the claimant's condition,' there is no *per se* rule requiring an ALJ to develop the medical record [by] obtain[ing] an additional consultative examination." *Hess v. Soc. Sec. Admin.,* No. CV 22-5305, 2024 WL 1231327, at *3 (E.D. La. Mar. 22, 2024) (citing *Wills*, 2023 WL 4015174, at *2-3).

The Fifth Circuit explained, "[An] ALJ [i]s entitled to find the administrative findings partially persuasive and then use those findings, together with other relevant record evidence, in making [an] RFC determination." *Wills,* 2023 WL 4015174, *3. An additional "consultative examination is required to develop a full and fair record only if the record establishes that such

17

an examination is necessary to enable the ALJ to make the disability decision." *Webster*, 19 F. 4th at 720 (quotations and citations omitted). Even where a record lacks medical opinions "describing the types of work that the applicant is still capable of performing, [their absence] does not, in itself, make the record incomplete." *Wills*, 2023 WL 4015174, at *3 (citation omitted). Rather, "where no medical statement has been provided, [a court's] inquiry focuses upon whether the [ALJ's] decision . . . is supported by substantial evidence." *Id.* Thus, when the Fifth Circuit found in *Wills* that the ALJ's decision was supported by substantial evidence, it also held there was no record development error. *Id*.

What *Wills* "and the Fifth Circuit precedent it relies on underscore is that within the 'exceedingly deferential' bounds of this Court's review, an ALJ's decision not to obtain additional medical opinions to shape an RFC determination is error only when there is not 'substantial evidence in the existing record' to 'support[ ]' that decision." *Hess,* 2024 WL 1231327, at *3 (citing *Wills*, 2023 WL 4015174, at *3); *See Doucet v. Berryhill,* No. CV 18-9048, 2019 WL 3526713, at *9 (E.D. La. May 13, 2019), *report and recommendation adopted*, No. CV 18-9048-WBV, 2020 WL 638855 (E.D. La. Feb. 11, 2020) (plaintiff argues "the ALJ improperly gave great weight to [a doctor that] rendered his opinion while the record was still developing. [T]he function of this court on judicial review is limited to determining whether . . . substantial evidence . . . support[s] the [ALJ's decision] and whether [he] applied the appropriate legal standards[.] The ALJ—not the non-examining state expert—is responsible for assessing the entire body of record evidence and reaching a final conclusion[.]"); *See also Carson v. Comm'r of Soc. Sec.*, No. 21-CV-12, 2022 WL 2525438, at *7 (E.D. Tex. May 25, 2022), *report and recommendation adopted*, 2022 WL 2489340 (July 6, 2022) (ALJ did not err in finding state agency opinions unpersuasive and in formulating the RFC based on testimony, medication management, daily living, and other medical evidence). Thus, even if McFarlain and

Constantin's opinions have gone stale, the ALJ had no duty to develop the record more fully[6] because substantial evidence supported his decision. *Id.*

Plaintiff's RFC, as drafted by the ALJ, is supported by the following evidence from the record, even ignoring McFarlain and Constantin's opinions. The ALJ provides a detailed analysis of the record as a whole, explaining all of the medical records detailed above,[7] the testimony of Plaintiff and its inconsistencies with medical records and prior testimony, and an analysis of each medical opinion. (Tr. 17-24). At nearly every appointment, Plaintiff's treating physician and social worker repeatedly noted she had intact self-care, domestic skills, casual appearance, intact cognition, an ability to communicate, was oriented, was attentive, had normal relationships with her friends and family, had no anger outbursts, had no hyperactive problems, had intact memory, was not confused, and was logical. (Tr. 28, 681, 686, 688, 693, 695, 705, 707, 709, 712, 714, 717, 719, 722, 730, 728, 734, 736, 738, 740, 742, 749, 751, 753, 755, 760, 763, 774-776). In an examination by Kunen, Plaintiff revealed that she was capable of understanding and carrying out instructions. (Tr. 674-677). According to her testimony and her doctors, Plaintiff has had boyfriends, gets along with her friends and family, and goes to the grocery store. (Tr. 17, 21-22, 67, 95, 97, 101, 133, 135, 141-42, 676, 683, 693, 703, 730, 732, 747). This Court concludes, therefore, that as (i) the RFC was supported by substantial evidence, and (ii) "the ALJ appropriately used the RFC when questioning [multiple] vocational expert[s], and [Plaintiff's]

---

[6] Even if the ALJ had erred in not further developing the record, Plaintiff has failed to show prejudice because she did not argue she "could and would have adduced evidence that might have altered the result." *Hess,* 2024 WL 1231327, at *3 (citation omitted). (R. Docs. 1, 10, 15). A showing of prejudice is required for remand. *Id.*

[7] "What [Plaintiff] characterizes as the ALJ substituting his opinion is . . . the ALJ properly interpreting the medical evidence to determine [Plaintiff's] capacity for work." *Taylor v. Astrue*, 706 F. 3d 600, 602-03 (5th Cir. 2012). The ALJ merely assessed notes medical professionals made during medical examinations; he "did not . . . draw medical opinions from raw data but properly examined . . . medical documentation." *Wills,* 2023 WL 4015174, at *3-4.

counsel had the opportunity to correct deficiencies in the ALJ's question[s,]" the ALJ's denial of disability must be affirmed. *Webster,* 19 F. 4th at 719 (quotations and citation omitted).

### V.   Conclusion

Based on the foregoing,

**IT IS RECOMMENDED** that the decision of the Social Security Administration be **AFFIRMED** and that Plaintiff's appeal be **DISMISSED with prejudice.**

Signed in Baton Rouge, Louisiana, on May 14, 2023.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**